IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LARAE AND STEVEN
MCCUBBINS,

      **Plaintiffs,**

  v.

BAC HOME LOANS SERVICING,
L.P., et al.,

      **Defendants.**

Case No. 2:11-cv-547
JUDGE ECONOMUS
MAGISTRATE JUDGE ABEL

## OPINION AND ORDER

Presently before the Court are Defendants' Motion to Dismiss (Doc. 7) and Defendants' Motion to Strike Plaintiffs' Opposition to Motion to Dismiss (Doc. 19). For the reasons that follow, Defendants' motion to strike is **DENIED** and Defendants' motion to dismiss is **GRANTED**.

### I.

Plaintiffs Larae and Steven McCubbins ("Plaintiffs") bring the instant action against Defendants Bank of America, N.A. (formerly known as BAC Home Loans Servicing, LP), Aaron Formby, Lance Bell, and Bank of America Corp. (collectively "Defendants") with various claims arising from the foreclosure of their residence, which is located in Delaware, Ohio.

Plaintiffs purchased the property with a note secured by a mortgage on the property. Defendant Bank of America, N.A. ("Bank of America") serviced the note. Bank of America is a subsidiary of Defendant Bank of America Corp. In the amended complaint, Plaintiffs allege that, in July 2009, they approached Bank of America about a possible loan modification. (Am.

1

Compl. ¶ 20.) According to Plaintiffs, Bank of America informed them that they would not be considered for a loan modification unless they were delinquent on their mortgage payments. (Am. Compl. ¶ 20.) Plaintiffs claim to have relied on this representation and stopped making payments. (Am. Compl. ¶ 33.) For several months, Plaintiffs attempted to send Bank of America the financial information it had requested, but were informed that Bank of America had not received the information. (*See* Am. Compl. ¶¶ 21–22.) Finally, on March 8, 2010, Bank of America sent Plaintiffs a letter acknowledging receipt of the information. (Am. Compl. ¶ 24.)

However, on April 12, 2010, Bank of America mailed another letter stating that Plaintiffs were being denied a loan modification because they failed to send the necessary financial paperwork. (Am. Compl. ¶ 27.) This letter was followed by still another letter on April 20, 2010 stating that no loan modification would be available based on the financial information received. (Am. Compl. ¶ 28.) Several similar letters followed in the ensuing months. (Am. Compl. ¶¶ 29–33.)

In the meantime, on April 24, 2010, Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as a nominee for M/I Financial Servicing, L.P., assigned the mortgage covering the property to Bank of America. (Am. Compl. ¶ 11, Ex. A.) The assignment was executed by Formby in his capacity as Vice President of MERS. (*See* Am. Compl. ¶ 12, Ex. A.) Plaintiffs allege that Formby did not have the authority to execute the assignment on behalf of MERS and also allege that Formby did not actually sign the assignment in the presence of a notary public. (Am. Compl. ¶ 14.)

On April 29, 2010, Bank of America filed a foreclosure action against Plaintiffs in the Court of Common Pleas of Delaware County. (Am. Compl. ¶ 9.) Bank of America recorded the assignment on May 10, 2010, subsequent to the initiation of the foreclosure action. (Am. Compl.

¶13.) In August 2010, Bank of America moved for summary judgment and the court granted the motion in October 2010. (*See* Am. Compl. ¶¶ 16, 19.) The motion for summary judgment was supported by an affidavit signed by Bell in which he averred that Plaintiffs were in default on their loan payments. (*See* Am. Compl. ¶ 17, Ex. B.) However, Plaintiffs allege that Bell lacked personal knowledge of their account. (Am. Compl. ¶ 18.) Thus, Plaintiffs contend that the court awarded summary judgment in the foreclosure action based solely on a fraudulent assignment of the mortgage and a false affidavit. (*See* Am. Compl. ¶19.)

Plaintiffs bring the following causes of action: (I) promissory estoppel; (II) violations of the Ohio Consumer Sales Practices Act; (III) common law fraud; (IV) breach of the covenant of good faith and fair dealing; (V) violations of the Fair Debt Collection Practices Act; (VI) violations of the Fair Credit Reporting Act; (VII) bad faith; (VIII) abuse of process; (IX) civil conspiracy; (X) violations of the Ohio Corrupt Practices Act; and (XI) negligent supervision. Defendants now move to dismiss each of the eleven counts for failure to state a claim upon which relief can be granted.

## II.

Before addressing the motion to dismiss, the Court briefly addresses Defendants' motion to strike Plaintiffs' response in opposition to the motion to dismiss. Defendants assert that the Court should strike Plaintiffs' response memorandum because it exceeds twenty pages and because Plaintiffs failed to request leave to exceed twenty pages and to include a table of contents and a succinct summary. However, as noted by Plaintiffs, Local Rule 7.2(a)(3) does not expressly require litigants to seek Court permission before submitting briefs in excess of twenty pages. Moreover, Plaintiffs have since supplemented their response memorandum with the

requisite table of contents and summary.  (*See* Doc. 20-1.)  Accordingly, the Court denies Defendants' motion to strike and will consider Plaintiffs' memorandum in opposition.

**III.**

Defendants have moved to dismiss Plaintiffs' claims pursuant to rule 12(b)(6).  A Rule 12(b)(6) motion requires dismissal if the complaint fails to state a claim upon which relief can be granted.  While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] formulaic recitation of the elements of a cause of action" is insufficient to state a plausible claim.  *Twombly*, 550 U.S. at 555.  Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 129 S. Ct. at 1949–50 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

**A.**

Count I of the amended complaint is a claim for promissory estoppel.  The elements of promissory estoppel are: "(1) a clear and unambiguous promise; (2) reliance on the promise; (3) the reliance is reasonable and foreseeable; and (4) the party relying on the promise was injured by his or her reliance."  *Dunn v. Bruzzese*, 874 N.E.2d 1221, 1227 (Ohio Ct. App. 2007).  Plaintiffs allege that Defendants promised that they would be approved for a loan modification and that they relied on that promise to their detriment.  (*See* Am. Compl. ¶¶ 50–51.)  Defendants argue that Count I fails to state a claim because Plaintiffs have not alleged that the promises at

issue were memorialized by a signed writing. Thus, according to Defendants, the claim is precluded by the statute of frauds. In their response in opposition to Defendants' motion to dismiss, Plaintiffs fail to address Defendants' statute of frauds argument.

Section 1335.02 of the Ohio Revised Codes provides that "[n]o party to a loan agreement may bring *an action* on a loan agreement unless the agreement is in writing and is signed by the party against whom the action is brought or by the authorized representative of the party against whom the action is brought." OHIO REV. CODE § 1335.02(B) (emphasis supplied). The term "loan agreement" is defined to mean:

> one or more *promises*, promissory notes, agreements, undertakings, security agreements, mortgages, or other documents or commitments, or any combination of these documents or commitments, pursuant to which a financial institution loans or delays, or agrees to loan or delay, repayment of money, goods, or anything of value, or otherwise extends credit or makes a *financial accommodation*.

*Id.* § 1335.02(A)(3) (emphasis supplied). The term "financial institution" includes federally-chartered banks and their subsidiaries. *Id.* § 1335.02(A)(2).

As Plaintiffs' promissory estoppel claim falls within the plain meaning of § 1335.02, the absence of a signed-writing memorializing the alleged promise is fatal to Count I. In this regard, the promised loan modification can be considered a promise to make a financial accommodation. The loan modification therefore falls within the definition of "loan agreement." Furthermore, the promissory estoppel claim can be considered "an action" on the loan agreement. For the above-stated reasons, Count I is dismissed pursuant to Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

**B.**

In Count II, Plaintiffs claim that Defendants' actions violated the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 *et seq.* ("OCSPA"). Pursuant to the OCSPA, "[n]o

5

supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." OHIO REV. CODE § 1345.02(A). Defendants contend that Count II fails as a matter of law because Plaintiffs' interactions with Defendants do not constitute a "consumer transaction." The Court agrees.

> Excluded from the OCSPA's definition of consumer transaction are
>
> transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers, except for transactions involving a loan made pursuant to sections 1321.35 to 1321.48 of the Revised Code and transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers.

*Id.* § 1345.01(A). As financial institutions such as national and state banks are included within the definitions established by § 5725.01, see *King v. CitiMortgage*, No. 2:10-cv-01044, 2011 U.S. Dist. Lexis 79722, at *30 (S.D. Ohio July 20, 2011), Plaintiffs' OCSPA claim against Defendants is barred unless their interactions with Defendants can be considered "transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers." A further review of the definitions established by the OSCPA, however, precludes this possibility. In this regard, Defendants do not fall within the definitions of loan officers, mortgage brokers, or nonbank mortgage lenders. *See* OHIO REV. CODE § 1345.01(H)(2) ("loan officer" does not include the employee of a bank or the employee of a subsidiary of a bank), (J)(2) ("mortgage broker" does not include a bank or a subsidiary of a bank), & (K) ("nonbank mortgage lender" does not include a bank or a subsidiary of a bank). Accordingly, Plaintiffs' OSCPA fails as a matter of law and is dismissed.

## C.

Count III of the amended complaint is a claim for common law fraud. In Ohio, the elements of claim for fraud are:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1083 (Ohio 1991). Plaintiffs' claim is predicated on what they characterize as false and fraudulent statements made by Defendants to Plaintiffs and the Delaware County Court of Common Pleas in the context of the foreclosure action and an allegation that Defendants fraudulently led them to believe that they would be granted a loan modification. (*See* Am. Compl. ¶¶ 58–64.) Defendants contend that Count III fails to state a claim with respect to the statements made during the foreclosure action because Defendants have not alleged that the statements were actually made to the Plaintiffs, and because Plaintiffs have not properly alleged reliance. To the extent that Plaintiffs' fraud claim is supported by false statements that Plaintiffs would be awarded a loan modification, Defendants assert that dismissal is warranted because Plaintiffs have failed to meet the heightened pleading requirements of Rule 9(b).

In addition to the basic pleading requirements found in Rule 8, Rule 9(b) specifies that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). In the Sixth Circuit, Rule 9(b)'s heightened pleading standard has been interpreted to require "plaintiffs to

7

'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993)). Failure to comply with the heightened pleading requirements of Rule 9(b) is treated as a failure to state a claim for which relief can be granted. *U.S. ex rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 976 (S.D. Ohio 2007) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999)).

The Court is persuaded by Defendants' arguments. Even if the Court accepts as true (which it must do for purposes of deciding Defendants' Rule 12(b)(6) motion) Plaintiffs' allegations that fraudulent statements were made to the Delaware County Court in the context of foreclosure litigation, it is far from clear, and Plaintiffs have cited no authority to the contrary, that such statements could be considered directed to the Plaintiffs. In this regard, the only statements specifically identified in the amended complaint are the affidavit submitted by Bell and the assignment signed by Formby. If other statements, not formally a part of the litigation process, were made, Plaintiffs claim fails because it does not specify the date and content of these statements as required by Rule 9(b). Additionally, the Court notes that the assignment was part of a transaction to which the Plaintiffs were not a party.

Moreover, Plaintiffs have also failed to sufficiently allege justifiable reliance. While the amended complaint does contain bare allegations that Plaintiffs relied on the allegedly false statements, these allegations are unsupported by other alleged facts demonstrating the manner of reliance, and the Court is not bound to accept legal conclusions couched as factual allegations. As the Supreme Court stated in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 129 S. Ct. at 1949.

While it is obvious that courts rely upon statements made by litigants in rendering decisions, it is far from obvious how a party to an action could justifiably rely upon and be damaged by formal representations to a court made by an opposing party. Finally, a possible fraud claim based on alleged statements by Defendants that Plaintiffs would be awarded a loan modification fails because Plaintiffs have not specifically alleged the time and place of these statements as required by Rule 9(b).

**D.**

Count IV of the amended complaint, which asserts a claim for a breach of the covenant of good faith and fair dealing, likewise fails to state a claim upon which relief can be granted. Count IV alleges that "Defendants were obligated by either contract or common law to act in good faith and to deal fairly with Plaintiffs" and that "Defendants have breached this duty owed to Plaintiffs by failing to approve them for a loan modification and/or a short sale, among other things." (Am. Compl. ¶¶ 66, 68.)

Count IV fails for at least two reasons. First, in Ohio, a claim for a violation of the duty of good faith and fair dealing cannot stand alone as a separate cause of action apart from a claim for breach of contract. *See Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996). Second, as noted by Defendants, the doctrine of good faith and fair dealing cannot be used to add new duties or obligations into a contract. *Webb v. Chase Manhattan Mortg. Corp.*, No. 2:05-cv-0548, 2008 WL 2230696, at *20 (S.D. Ohio May 28, 2008). Nor is the duty of good faith violated where a party merely exercises a contractual right. *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 207 (6th Cir. 1995). Despite the allegation

9

that a duty was breached by Defendants' failure to grant a loan modification, elsewhere in the amended complaint, Plaintiffs concede that "they neither were, nor are, necessarily entitled to a loan modification." (Am. Compl. n.1.) Moreover, to the extent that Count IV may be based on the foreclosure action itself, Plaintiffs also conceded in the amended complaint that they ceased making payments on the note secured by the mortgage. (*See* Am. Compl. ¶ 33.)

**E.**

Count V is a claim for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Plaintiffs specifically allege that Defendants have violated Sections 807 and 808 of the FDCPA, which respectively preclude debt collectors from using "any false, deceptive, or misleading representation" or "unfair or unconscionable means" in connection with the collection of a debt. 15 U.S.C §§ 1692e, 1692f. However, dismissal of Count V is warranted because Plaintiffs have not properly alleged that Defendants are "debt collectors." The FDCPA defines debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). While the amended complaint does contain the allegation that Defendants are debt collectors, that allegation is unsupported by other facts establishing that Defendants meet the definitional requirements of the FDCPA. Accordingly, Paragraph 73 of the amended complaint amounts to nothing more than a legal conclusion couched as a factual allegation.

Furthermore, the FDCPA's definition of debt collector contains several exceptions that are applicable to Defendants in this case. The term debt collector does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor" or

"any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(A), (F)(iii). The term "creditor" includes "any person . . . to whom a debt is owed." *Id.* § 1692a(4). For the above-stated reasons, Count V of the amended complaint is dismissed for failure to state a claim upon which relief can be granted.

**F.**

Count VI, which is a claim for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), similarly is dismissed for failing to state a claim. Plaintiffs' claim is brought pursuant to Section 623(b) of the FCRA, which establishes obligations for furnishers of information to consumer reporting agencies upon receipt of notice from a consumer reporting agency that a consumer has disputed the accuracy of information provided by the furnisher to the agency. *See* 15 U.S.C. § 1681s-2(b). These obligations include that the furnisher of information conduct an investigation with respect to the disputed information. *See id.* § 1681s-2(b)(1)(A).

Plaintiffs' amended complaint alleges that they sent a letter to TransUnion concerning information reported by Defendants to TransUnion that Defendants "should not have reported." (Am. Compl. ¶ 82.) However, the obligations established by Section 623(b) do not arise until a notice of dispute is provided by a consumer reporting agency to a furnisher of information. As the amended complaint fails to allege that TransUnion ever so-notified Defendants, Count VI is facially defective and fails as a matter of law. *See Downs v. Clayton Homes, Inc.*, 88 F. App'x 851, 853–54 (6th Cir. 2004) ("the plaintiff must show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed") (citing *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639–40 (5th Cir. 2002)).

11

## G.

Count VII, which asserts a claim for bad faith, is dismissed for the same reasons stated in Part II.D *supra*. Moreover, as conceded by Plaintiffs in the amended complaint (see Am. Compl. n.4.), Ohio law does not recognize an independent claim for bad faith in the mortgage context, and the Court declines to recognize such a claim.

## H.

Count VIII is a claim for the tort of abuse of process arising from the foreclosure action in the Delaware County Court of Common Pleas. The elements of abuse of process include:

> (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.

*Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 626 N.E.2d 115, 116 (Ohio 1994) (syllabus of the Court). As noted by the Supreme Court of Ohio in *Yaklevich*, abuse of process occurs where "there is an act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." *Id.* at 118 (quotations omitted). In other words, "abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 14 (Ohio 1996). "[T]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Yaklevich*, 626 N.E.2d at 118 n.2 (quotations omitted).

The amended complaint alleges that Defendants initiated the foreclosure action for the ulterior purpose of wrongfully foreclosing on their property. (Am. Compl. ¶ 95.) However, as the alleged ulterior purpose is the very purpose for which a foreclosure action exists, i.e. for

obtaining a foreclosure, Count VIII fails to state a claim for abuse of process and must be dismissed.

**I.**

Count IX is also dismissed. In Count IX, Plaintiffs assert a claim for civil conspiracy, which is defined by Ohio courts as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995) (quotations omitted). In Paragraph 98 of the amended complaint, Plaintiffs allege that "Defendants engaged in a malicious combination involving at least two people or entities." (Am. Compl. ¶ 98.) However, as the amended complaint alleges that both Formby and Bell were employees and/or agents of Bank of America, (see Am. Compl. ¶¶ 3, 4.), Defendants assert that Count IX should be dismissed pursuant to the intracorporate conspiracy doctrine.

The intracorporate conspiracy doctrine provides that a corporate entity generally cannot conspire with its own employees or agents. *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991). Plaintiffs correctly note that an exception to the intracorporate conspiracy doctrine lies in instances where employees of the corporate entity act outside the scope of their employment in participating in the conspiracy. *See Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994). Nonetheless, Count IX must be dismissed because Plaintiffs have failed to allege that Formby and Bell acted outside the scope of their employment. *See Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999) (failure to allege that employees acted outside scope of employment was fatal to invocation of the exception to the intracorporate conspiracy doctrine), *overruled on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

**J.**

Count X is a claim for civil violations of the Ohio Corrupt Practices Act, Ohio Revised Code § 2923.31 *et seq.* ("OCPA"). The OCPA generally prohibits the collection of "unlawful debt" and engaging in patterns of "corrupt activity." *See* OHIO REV. CODE § 2923.32(A)(1)–(3). Count X is also dismissed because it fails to state a claim upon which relief can be granted.

The amended complaint alleges that Defendants engaged in unlawful debt collection. Under the OCPA, for a debt to be unlawful, the debt must be "legally unenforceable in [Ohio] in whole or in part because the debt was incurred or contracted in violation of any federal or state law relating to the business of gambling activity or relating to the business of lending money at an usurious rate." *Id.* § 2923.31(L). The only debt referenced in the amended complaint is the note secured by the mortgage on Plaintiffs' property. However, the amended complaint contains no allegations that this debt is in any way unenforceable because of its relation to gambling or because it violates usury laws.

Additionally, the amended complaint fails to properly allege that Defendants engaged in a pattern of corrupt practices. OCPA's definition of "corrupt practice" is limited to a specified set of various criminal and other offenses defined in the Ohio Revised Code and elsewhere. *See id.* § 2923.31(I). Foreclosing on a mortgage is not included within the specified activities. Further, Plaintiffs fail to articulate, either in the amended complaint or in their response in opposition to Defendants' motion to dismiss, how the conduct alleged in the amended complaint fits within the statutory definition of corrupt practices. Accordingly, Count X fails to state a claim for relief that is plausible.

**K.**

Finally, the Court also dismisses Count XI, which is a claim for negligent supervision. Plaintiffs allege that Defendants had full and complete knowledge that Bell, Formby, and other employees were engaged in widespread fraud and did not take remedial steps in response. (*See* Am. Compl. ¶ 107.) Ohio Courts have identified the following elements of a claim for negligent supervision: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Cooke v. Montgomery Cnty.*, 814 N.E.2d 505, 509 (Ohio Ct. App. 2004). Further, according to the Supreme Court of Ohio, "an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person." *Strock v. Pressnell*, 527 N.E.2d 1235, 1244 (Ohio 1988).

Here, Plaintiffs claim for negligent supervision fails because they have not sufficiently pleaded an underlying tort committed by either Bell or Formby. While Count XI suggests that the tort of fraud was committed, the Court decided, in Part II.C *supra*, that Plaintiffs' have failed to sufficiently plead their fraud claim. Therefore, as the fraud claim is a necessary element of the claim for negligent supervision, Count XI fails as well.

**III.**

For the above-stated reasons, Defendants' Motion to Strike Plaintiffs' Opposition to Motion to Dismiss (Doc. 19) is **DENIED**, and Defendants' Motion to Dismiss (Doc. 7) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendants and close this matter.

**IT IS SO ORDERED.**


 01/18/2012                                          /s/ Peter C. Economus
**DATED**                                            **PETER C. ECONOMUS**
                                                     **UNITED STATES DISTRICT JUDGE**